**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cheyenne Hiddessen, | No. CV-22-01883-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Cheyenne Hiddessen's Application for Disability Insurance Benefits under the Social Security Act by the Commissioner of the Social Security Administration. Plaintiff filed a Complaint (Doc. 1) with this Court seeking review of that denial. The Court has reviewed the briefs (Docs. 10, 12, 13) and the Administrative Record (Doc. 8, "A.R."), and now affirms the Administrative Law Judge's ("ALJ") decision.

## I.    BACKGROUND

Plaintiff filed an Application for Disability Insurance Benefits on June 2, 2020. (A.R. at 223-29.) Plaintiff's claim was denied initially on June 18, 2020 (*id.* at 73-74), and upon reconsideration on August 27, 2021 (*id.* at 111-14). Thereafter, Plaintiff filed a written request for a hearing (*id.* at 120-21), and a telephonic hearing was held on September 9, 2021 (*id.* at 32-72). The ALJ denied Plaintiff's application on October 5, 2021. (*Id.* at 12-31.) The Appeals Council denied Plaintiff's request for review on September 13, 2022. (*Id.* at 1-6.) Plaintiff now seeks judicial review with this Court

pursuant to 42 U.S.C. § 405(g).

The Court has reviewed the record and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the following severe impairments: an anxiety disorder, a panic disorder, a bipolar disorder, and a schizoaffective disorder. (*Id.* at 18.)

The ALJ found that Plaintiff did not have any impairments or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 19-21.) Next, the ALJ determined Plaintiff's residual functional capacity ("RFC").[1] The ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform work involving only simple work-related decisions and relatively few workplace changes, which require no more than occasional interaction with supervisors, coworkers and the public, and not performed in a fast-paced production environment.

(*Id.* at 21.) Based on this RFC, the ALJ found that Plaintiff, though not capable of performing any past relevant work as defined at 20 C.F.R. § 404.1565 (*id.* at 24), is capable of performing jobs such as packager, laundry worker, and cleaner (*id.* at 25). Ultimately, having reviewed the medical evidence and testimony, the ALJ concluded that Plaintiff was not disabled from the alleged disability onset date through the date of the decision. (*Id.* at 25-26.)

## II.  LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable

---

[1] Residual functional capacity refers to the most a claimant can still do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, — U.S. —, 139 S. Ct. 1148, 1157 (2019); *see also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

1

2   **III.    DISCUSION**

3          Plaintiff raises two arguments for the Court's consideration. First, Plaintiff contends

4   that the ALJ erred in rejecting the prior administrative medical findings of Drs. E.

5   Campbell, Ph.D. and C. Eblen, Ph.D. and the opinion of treating provider Thomas Martin,

6   PA-C. (Doc. 10 at 4-13.) Second, Plaintiff argues that the ALJ erred in rejecting her

7   symptom testimony. (*Id.* at 13-21.)

8          **A.    Findings and Opinions**

9          Plaintiff asserts that the ALJ "failed to adequately evaluate the supportability and

10  consistency of the [findings] from state agency physicians E. Campbell, Ph.D. and C.

11  Eblen, Ph.D. and the opinion of treating provider Thomas Martin, PA-C and to support her

12  findings with substantial evidence." (*Id.* at 4.)

13         In 2017, the Commissioner revised the regulations for evaluating medical evidence

14  for all claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the

15  Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). As Plaintiff's

16  claim was filed after the effective date, the revised rules apply. (A.R. at 214-17.) Unlike

17  the old regulations, the revised rules do not require an ALJ to defer to the opinions of a

18  treating physician nor assign every medical opinion a specific evidentiary weight. 20

19  C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Lester v. Charter*, 81 F.3d 821, 830-31 (9th

20  Cir. 1995) (requiring an ALJ to provide "specific and legitimate reasons that are supported

21  by substantial evidence in the record" when rejecting a treating physician's opinion).

22         The revised rules instead require the ALJ to consider all opinion evidence and

23  determine the persuasiveness of each medical opinion's findings based on factors outlined

24  in the regulations. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The most important

25  factors considered by an ALJ are "consistency" and "supportability." 20

26  C.F.R. § 404.1520c(b)(2). Supportability is defined as how "relevant the objective medical

27  evidence and supporting explanations presented by a medical source are to support his or

28  her   medical   opinion(s)   or   prior   administrative   medical   findings."   20

C.F.R. § 404.1520c(c)(1). Consistency means "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(2)). The ALJ should also treat opinions as more persuasive if they are more consistent with "other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Lastly, the ALJ can also consider, to a lesser degree, other factors, such as the length and purpose of the treatment relationship, the kinds of examinations performed, and whether the medical source actually examined the claimant. *Woods*, 32 F.4th at 792.

The Ninth Circuit recognizes that the revised rules clearly intended to abrogate its precedent requiring ALJs to provide "specific and legitimate reasons" for rejecting a treating physician's opinion. *Id.* Nevertheless, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* Therefore, an ALJ, "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)) (internal citation omitted).

### i.   Findings of E. Campbell, Ph.D. and C. Eblen, Ph.D.

Plaintiff argues that "[t]he ALJ committed harmful error in her failure to provide an explanation, supported by substantial evidence, as to why she rejected key portions of the opinions of Drs. Campbell and Eblen." (Doc. 10 at 4.) Specifically, Plaintiff takes issue with the ALJ's rejection of the doctors' findings that Plaintiff "is moderately limited in concentration, persistence, and pace and adaptation." (A.R. at 24.)

The record reflects that Dr. Campbell completed a Disability Determination Explanation on June 18, 2020 (*id.* at 75-88) and Dr. Eblen completed a Disability Determination Explanation on August 26, 2020 (*id.* at 89-103). Both doctors evaluated Plaintiff's pain and limitations in her understanding and memory, sustained concentration

and persistence, social interaction, and ability to adapt. (*Id.* at 83, 98.) Both determined that, while Plaintiff's impairments could reasonably be expected to produce Plaintiff's pain or other symptoms, the intensity, persistence, and functionally limiting effects of those symptoms was not substantiated by the objective medical evidence alone. (*Id.* at 83, 98.) Both doctors agreed that Plaintiff is not disabled. (*Id.* at 87, 103.)

Having considered these assessments, and though generally agreeing with the bulk of them, the ALJ found Drs. Campbell and Eblen's findings partially persuasive, concluding that a portion is "not consistent with this decision and [] not supported by the medical evidence record and [Plaintiff's] testimony." (*Id.* at 24.) The ALJ rejected the doctors' findings that Plaintiff "is moderately limited in concentration, persistence, and pace and adaptation." (*Id.*) The ALJ did so because the record "indicates that [Plaintiff's] attention is normal. It also indicates that [Plaintiff] is primarily independent in her activities of daily living and has had improvements with her chronic anxiety." (*Id.*)

For the reasons discussed below, the Court finds that the ALJ adequately addressed the supportability and consistency factors in classifying Drs. Campbell and Eblen's findings as only partially persuasive. The ALJ sufficiently explained that the doctors' conclusions regarding Plaintiff's limitations in concentration, persistence, and pace and adaptation lacked support from the record and are inconsistent with the evidence from other medical sources. (*Id.* at 25.) The Court finds that the ALJ provided sufficient analysis demonstrating that Plaintiff's limitations are inconsistent with and unsupported by the record. (*Id.* at 19-25.) Further, the Court finds that the ALJ's conclusion is supported by substantial evidence. *Farlow v. Kijakazi*, 53 F.4th 485, 487-88 (noting that substantial evidence is simply that which "a reasonable mind might accept as adequate to support a conclusion") (internal citations omitted). Plaintiff, however, argues that the ALJ's reasoning is insufficient for several reasons.

### 1.    One or Two Step Instructions

"First, a review of the opinions reveals more discrepancies between the opined limitations and the assigned RFC than just a 'moderate limitation in concentration[,]

persistence and pace and adaptation.'" (Doc. 10 at 4) (quoting A.R. at 24.) Specifically, both doctors indicated that Plaintiff is incapable of doing work that requires following more than one or two step instructions. (*Id.* at 4-5.) The ALJ did not discuss this conclusion or explicitly reject it. (*Id.* at 5.) Dr. Alan Cummings, the vocational expert, later found that, based on the RFC provided by the ALJ, Plaintiff would be capable of performing jobs such as packager, laundry worker, and cleaner. (A.R. at 25.) Plaintiff notes that each of these jobs require following instructions that are more than one or two steps in length. (Doc. 10 at 5.) The ALJ adopted Dr. Cummings' conclusions in her determination. (A.R. at 25.)

Plaintiff argues that the ALJ committed error by failing to provide an explanation supported by substantial evidence for rejecting Drs. Campbell and Eblen's conclusions that Plaintiff is only capable of following one or two step instructions. (Doc. 10 at 4-6.) The error was harmful, Plaintiff contends, because each of the jobs the ALJ found Plaintiff capable of performing would be precluded if Drs. Campbell and Eblen's findings had been fully credited. (*Id.*)

The Court finds that the ALJ provided sufficient reasons for rejecting Drs. Campbell and Eblen's findings regarding Plaintiff's ability to follow instructions. While the ALJ did not specifically state that she was rejecting that portion of the doctors' findings, the ALJ articulated sound reasons for finding that Plaintiff is not as limited in concentration, persistence, and pace and adaptation—all essential components to one's ability to follow instructions—as the doctors suggested. (A.R. at 24.) First, the ALJ noted that the medical record indicates Plaintiff's ability to pay attention is normal. (*Id.*) Second, the ALJ emphasized that Plaintiff is primarily independent in her daily activities, managing to carry out essential tasks on her own throughout the day. (*Id.*) The Court finds that the application of this reasoning to Plaintiff's ability to follow simple instructions beyond one or two steps is apparent, even if not explicit. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (noting that the ALJ was not required to recite "magic words" when evaluating medical opinion evidence and that the Court can draw specific and legitimate inferences from the ALJ's discussion).

### 2.    Correct Legal Standard

Plaintiff next argues that "the ALJ's rejection of [Drs. Campbell and Eblen's] moderate limitations in concentration, persistence and pace and adaptation is inadequate under the applicable legal standard." (Doc. 10 at 6.) Specifically, Plaintiff argues that the ALJ erred when she analyzed whether the doctors' limitations are "consistent with this decision." (*Id.*) (quoting A.R. at 24.) Rather, Plaintiff contends, the ALJ should have evaluated the doctors' findings for consistency with evidence from other medical and nonmedical sources in the claim. (*Id.*) (citing 20 C.F.R. § 404.1520c(c)(2).)

Though Plaintiff is correct about the correct legal standard to be applied, she mischaracterizes the ALJ's analysis. The ALJ's comment that certain of Drs. Campbell and Eblen's findings were inconsistent with the ALJ's decision was merely a prefatory statement indicating the ALJ's disagreement with the doctors' findings. (A.R. at 24.) As described above, the ALJ went on to provide reasons from the record—indeed, from both medical and nonmedical sources in the claim—for rejecting that portion of the doctors' findings. (*Id.*) In fact, while Plaintiff cites the ALJ's statement that the doctors' findings are "not consistent with this decision," she leaves out the very next clause which indicates that the ALJ applied the correct legal standard: "*and is not supported by the medical evidence record and [Plaintiff's] testimony.*" (*Id.*) (emphasis added.)

### 3.    The Supportability Factor

Plaintiff next argues that the ALJ failed to sufficiently address the supportability factor because she "did not address the doctors' own supporting explanations of their opinions." (Doc. 10 at 6.) Relatedly, Plaintiff contends that the ALJ committed error by making findings not supported by the record. (*Id.* at 6-7.)

For the reasons discussed above, the Court finds that the ALJ adequately addressed the supportability factor when crediting Drs. Campbell and Eblen's findings as only partially persuasive. Additionally, and contrary to Plaintiff's arguments, the ALJ's findings were supported by the record. As carefully catalogued by Defendant in its Answering Brief, there is extensive record support for the ALJ's findings that Plaintiff had normal attention,

participated in daily activities which contradicted Drs. Campbell and Eblen's findings, and showed steady progress in her anxiety symptoms with the aid of medication. (Doc. 12 at 7-8, 10-11.) Plaintiff contests the ALJ's interpretation of the evidence, but even if the evidence in the record is "susceptible to more than one rational interpretation," this Court may not disturb the ALJ's interpretation so long as it is among those rational interpretations. *Thomas*, 278 F.3d at 954.

### ii.    Opinion of Thomas Martin, PA-C

Plaintiff contends that "[t]he ALJ's discussion of PA Martin's opinion was wholly inadequate to support her dismissal of its contents and constitutes harmful, legal error . . . . Moreover, the ALJ's evaluation of the underlying evidence related to claimant's psychiatric impairments was equally insufficient to overcome the inadequate analysis of the opinion." (Doc. 10 at 13.)

The record reflects that PA Martin completed a Work Capacity Evaluation on October 15, 2020. (A.R. at 390-92.) PA Martin evaluated Plaintiff's limitations in understanding and memory, sustained concentration and persistence, social interaction, and ability to adapt. (*Id.*) Unlike Drs. Campbell and Eblen, PA Martin found that Plaintiff has extreme limitations in every category. (*Id.*) PA Martin opined that Plaintiff would miss five days or more of work a month and be off task 30% or more of every workday due to her limitations. (*Id.* at 392.) Accordingly, PA Martin found that Plaintiff was not fit for competitive work. (*Id.*)

Having considered PA Martin's assessment, the ALJ found it unpersuasive. (*Id.* at 24.) The ALJ summarized that PA Martin's "statements indicate that [Plaintiff] had extreme limitation in all areas of functioning, which is not consistent with this decision and is not supported by the medical evidence record." (*Id.*) Specifically, the ALJ found this conclusion inconsistent because Plaintiff's

> depressive disorder is noted as mild. [Plaintiff] has had minimal counseling. It was noted at her last counseling appointment that her symptoms had almost disappeared after a change of medication. She was able to attend college classes and work part-time while doing so. A progression in improvement with her chronic anxiety has been shown. Her

mental status examinations have largely been unremarkable.

(*Id.*)

As explained below, the Court finds that the ALJ adequately addressed the supportability and consistency factors in finding PA Martin's opinion not persuasive. The ALJ sufficiently explained that PA Martin's conclusion that Plaintiff has extreme limitations in every category is not supported by the record and is inconsistent with the evidence from other medical sources. (*Id.* at 24.) The Court finds that the ALJ provided sufficient analysis of the record demonstrating that the alleged limitations are inconsistent with and unsupported by the record. (*Id.* at 19-24.) Further, the Court finds that the ALJ's conclusion is supported by substantial evidence. Plaintiff nonetheless contends that the ALJ's reasoning is inadequate.

### 1.     Correct Legal Standard

Plaintiff reraises her argument that the ALJ applied the wrong legal standard, this time when evaluating PA Martin's opinions, considering whether PA Martin's opinions were "consistent[] with the decision, rather than the evidence." (Doc. 10 at 8.) This argument lacks merit for the reasons already provided.

### 2.     Allegations of Improvement

Plaintiff next asserts that the ALJ incorrectly characterized Plaintiff's symptoms as improving. (*Id.* at 8-11.) The Court finds that the ALJ appropriately viewed the medical evidence "in light of the overall diagnostic record." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). The ALJ detailed Plaintiff's counseling sessions starting in 2018, her reported progress after changing medication in 2019, her treatment in 2020, and her limited treatment in 2021. (A.R. at 22-23.) All of the cited evidence suggests a steady, consistent improvement in Plaintiff's reported symptoms. (*Id.*) The record does not demonstrate that the ALJ selectively relied on evidence suggesting Plaintiff's symptoms were improving while ignoring contrary evidence. Accordingly, the Court finds that the ALJ's conclusions are supported by substantial evidence.

### 3.	Counseling Appointments

Plaintiff argues that the ALJ's opinion that Plaintiff had minimal counseling is not substantial evidence that PA Martin's opinion is not persuasive, is unsupported by the record, and is premised upon the ALJ's misunderstanding regarding Plaintiff's professional relationship with PA Martin. (Doc. 10 at 9.) Specifically, Plaintiff emphasizes the ALJ's summary that she visited PA Martin only for medication, when she in fact received psychotherapy (in addition to consulting about medication) on most occasions when she visited PA Martin. (*Id.*)

The ALJ's characterization of Plaintiff as having received minimal counseling is incorrect for the reasons Plaintiff suggests. (*Id.*) The record demonstrates that Plaintiff saw PA Martin on a near monthly basis from January 2020 to the hearing in September 2021, receiving thirty-minutes of psychotherapy on most of those visits. (A.R. at 368, 372, 380, 382, 386, 389, 426, 429, 433, 435, 459, 462, 466, 470, 474.) Though the ALJ may have rationally concluded that this still constituted minimal treatment, the ALJ did not do so. (*Id.* at 24.) Instead, the ALJ erroneously concluded that Plaintiff only saw PA Martin for medication management. (*Id.*) The Court, however, finds that this error is harmless because the ALJ's overall conclusion that PA Martin's opinion is unpersuasive is still supported by substantial evidence for the reasons noted throughout this Order. *Molina v. Astrue*, 674 F.3d 1004, 1115 (9th Cir. 2012) ("[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negative the validity of the ALJ's ultimate conclusion.")

### 4.	College Attendance and Part-Time Work in the Fall of 2019

Plaintiff next argues that her "partially successful completion of one part-time semester of community college does not constitute substantial evidence to reject PA Martin's' opinion." (Doc. 10 at 11.)

The ALJ appropriately relied upon Plaintiff's ability to attend a semester of community college during the relevant period. *Johnson v. Comm'r of Soc. Sec. Admin*, No.

- 11 -

CV-19-00286-PHX-SMB, 2021 WL 1115929, at *4 (D. Ariz. Mar. 24, 2021) (noting Plaintiff's attendance at college as a valid reason for the ALJ to reject Plaintiff's symptom testimony). Though, as Plaintiff suggests, that evidence on its own may not constitute substantial evidence to reject PA Martin's opinion, the Court considers it alongside the other evidence relied upon by the ALJ. *See Valenta v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00126-PHX-MTM, 2021 WL 287778, at *5 n. 1 (D. Ariz. Jan. 28, 2021). Considered in addition to the evidence of Plaintiff's consistently improving symptoms and unexceptional mental status examinations, the Court finds that the ALJ's decision not to rely on PA Martin's opinion is supported by substantial evidence.

Plaintiff also argues that the ALJ's decision is not supported by substantial evidence because Plaintiff's worsening symptoms following her time at community college supports PA Martin's opinion. (Doc. 10 at 11.) While the ALJ could have adopted this interpretation of the evidence, she chose a different, equally rational interpretation in concluding that Plaintiff's completion of a semester of community college contradicted PA Martin's conclusions. *Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). The ALJ's decision, thus, is supported by substantial evidence and will not be disturbed.

Plaintiff additionally notes that "the part-time work that [Plaintiff] engaged in while attending college in the fall of 2019 was for her parents' business." (Doc. 10 at 11.) Though Plaintiff does not say so, Plaintiff appears to suggest that this fact makes the ALJ's reliance on Plaintiff's part-time work in rejecting PA Martin's opinion inappropriate. (*Id.*) This is not the case. An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled. *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).

### 5.    Mental Status Examinations

Plaintiff asserts that the ALJ's reliance on Plaintiff's unremarkable mental status examinations is inadequate because the ALJ "fail[ed] to explain with specificity how the

mental status exams support her rejection of [PA Martin's] opinion." (*Id.* at 12.) This argument is unpersuasive. PA Martin found that Plaintiff had extreme limitations in all areas of functioning due to allegedly disabling mental impairments. (A.R. at 24.) Contrary to Plaintiff's characterization, evidence of her largely unremarkable mental status examinations stands in direct and obvious contradiction to PA Martin's findings of extreme limitations.

Plaintiff also contends that the ALJ's reliance on evidence of Plaintiff's cognitive functioning, such as intact memory, attention, insight, judgment, and thought process, is inappropriate. (Doc. 10 at 12.) But PA Martin found that Plaintiff had extreme limitations in areas of functioning involving understanding and memory, concentration and memory, social interaction, and adaptation. (A.R. at 390-92.) Evidence of Plaintiff's memory, attention, insight, judgment, and thought process is highly relevant to evaluating the accuracy of PA Martin's conclusions regarding Plaintiff's mental limitations. The ALJ's reliance on such evidence, therefore, was appropriate. *See Christensen v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00007-TUC-JCH (EJM), 2022 WL 3974214, at *4-5 (D. Ariz. Sept. 1, 2022).

### 6.    The Supportability Factor

Plaintiff finally argues that the ALJ generally did not sufficiently address the supportability factor when evaluating PA Martin's opinion. For the reasons articulated above, the Court finds otherwise.

### B.    Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred because her "dismissal of [Plaintiff's] allegations of symptom severity is not supported by substantial evidence. Her summary of the medical evidence is inaccurate and incomplete and her reliance on claimant's minimal counseling appointments is factual error and insufficient to dismiss her allegations entirely." (*Id.* at 21.)

In evaluating a claimant's symptom testimony, the ALJ employs a two-step process. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ considers whether

the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Second, if the claimant presents such evidence, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The Ninth Circuit has expressly held that a claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282 (internal citation omitted). The clear and convincing standard is the most demanding in social security cases. *Garrison*, 759 F.3d at 1015. And an ALJ's "vague allegation" that a claimant's symptom testimony is inconsistent with the medical record does not meet the clear and convincing standard. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014). Similarly, an ALJ cannot satisfy the clear and convincing standard based solely upon "a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680. Rather, in making credibility determinations, an ALJ may consider a variety of factors in evaluating symptom testimony including, "[the claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir. 1997) (citations omitted).

In evaluating Plaintiff's testimony, the ALJ determined that step one was satisfied as Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. at 22.) The ALJ, however, rejected Plaintiff's symptom testimony because her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other

1    evidence in the record." (*Id.*)

2        The ALJ discussed multiple examples of medical evidence in the record that

3    contradicted Plaintiff's symptom testimony. (*Id.* at 22-23.) For example, the ALJ outlined

4    Plaintiff's treatment history as described in the record, noting that Plaintiff engaged in

5    limited counseling and reported, in her most recent counseling session, that her symptoms

6    had "almost disappeared after a change of medication." (*Id.* at 23.) Additionally, the ALJ

7    noted that Plaintiff was not then receiving counseling and was managing her symptoms

8    through medication alone. (*Id.*) The ALJ further summarized that Plaintiff had consistently

9    denied a depressed mood, out-of-control anxiety, visual hallucinations, sleep problems, and

10   difficulty determining reality in recent treatments. (*Id.* at 22-23.) Plaintiff's mental status

11   examinations, the ALJ emphasized, had been largely unremarkable. (*Id.* at 23.) Moreover,

12   she had "been reducing her medication due to improvement in her condition." (*Id.*) Finally,

13   the ALJ noted that Plaintiff was reported as experiencing symptoms of Cotards Syndrome,[2]

14   but that such episodes were rare and largely controlled through medication. (*Id.* at 23.)

15       The ALJ also recited several examples of nonmedical evidence, in the form of

16   Plaintiff's daily activities, that contradicted Plaintiff's symptom testimony. (*Id.* at 23.) The

17   ALJ noted that Plaintiff visited IKEA, went on trips to pick up groceries, visited her

18   husband at his job, planned to attend a family vacation in Florida, attended family game

19   nights, accompanied her husband to pick up food, occasionally visited her best friend at a

20   bagel shop, and sometimes visited her parents' cabin. (*Id.*) The ALJ concluded that this

21   evidence is inconsistent with Plaintiff's claimed inability to leave her home. (*Id.*)

22   Additionally, the ALJ emphasized that Plaintiff cared for dogs, did art projects, played

23   family games, and completed puzzles. (*Id.*)

24       Plaintiff argues that the ALJ's analysis is insufficient for five reasons. Though

25   Plaintiff is correct on two of her points, the Court finds that the ALJ's decision to discredit

26

27   [2] "People with Cotard's [S]yndrome (also called walking corpse syndrome or Cotard's delusion) believe that parts of their body are missing, or that they are dying, dead, or don't exist. They may think nothing exists." Linda Rath, *What Is Cotard's Syndrome (Walking*
28   *Corpse       Syndrome)?*,      WebMD      (Feb.   13,   2022), https://www.webmd.com/schizophrenia/cotards-syndrome.

1   her testimony remains supported by substantial evidence. *Molina*, 674 F.3d at 1115.

2             **i.**       **Counseling Appointments**

3         The Court finds that the ALJ's description of Plaintiff as having received minimal

4   counseling is incorrect for the reasons stated above. The Court, however, finds that the

5   error is harmless because the ALJ's decision to discredit Plaintiff's testimony is still

6   supported by substantial evidence for the reasons noted throughout this Order.

7             **ii.**      **College Attendance and Part-Time Work in the Fall of 2019**

8         Plaintiff reraises her arguments regarding the ALJ's reliance on Plaintiff's brief

9   community college attendance and part-time work in the Fall of 2019. These arguments

10  are unpersuasive for the reasons previously stated.

11            **iii.**     **Inconsistency with Medical Records**

12        Plaintiff next argues that the ALJ cherry-picked from the record to manufacture a

13  narrative that her symptoms were improving. (Doc. 10 at 16-17.) Plaintiff points to seven

14  of PA Martin's reports that the ALJ relied upon and asserts that the ALJ ignored portions

15  of the reports that did not support her conclusion. (*Id.*)

16        While each of the reports contain information regarding the ongoing existence of

17  Plaintiff's symptoms, several explicitly conclude that Plaintiff is "improving" or "doing

18  well." (A.R. 381-82, 386.) In another record, PA Martin noted that Plaintiff was doing fine

19  until she ingested a marijuana brownie which exacerbated some of her symptoms, but that

20  she was otherwise doing well. (*Id.* at 367.) Plaintiff emphasizes another record which

21  shows that the dosage of one of Plaintiff's medications had been increased, but the same

22  record shows that the dosage of one of Plaintiff's other medications had been decreased.

23  (*Id.* at 388.) Finally, Plaintiff notes that another of the records describes her frequent manic

24  symptoms, but Plaintiff describes those symptoms only as "her mind [] racing a little" and

25  causing her to have trouble completing some projects. (*Id.* at 428.) In sum, the Court finds

26  that the ALJ's conclusion that, overall, Plaintiff was experiencing improvement in her

27  symptoms is supported by substantial evidence. *See Andrews v. Shalala*, 53 F.3d 1035,

28  1039-40 (9th Cir.1995) ("The ALJ is responsible for determining credibility, resolving

1  conflicts in medical testimony, and for resolving ambiguities.")

2  **iv.    Reduction of Medication Due to Symptom Improvement**

3  Plaintiff asserts that the ALJ "inaccurately [concluded] that [Plaintiff's] medications

4  were being reduced 'due to improvement in her condition.'" (Doc. 10 at 18) (quoting A.R.

5  23.) According to Plaintiff, she was being weaned off her medication due to side effects

6  she was experiencing, and her symptoms generally worsened as her medication was

7  lowered. (*Id.*) The record confirms that Plaintiff's medications were adjusted for the

8  reasons she states. (A.R. at 460, 464, 468.) However, it belies her assertion that her

9  symptoms worsened overall as her medications were reduced. (A.R. at 460 ("Patient . . .

10  was told to discontinue the additional 20mg tab in the evening of the ziprasidone . . . Mood

11  is still stable."), 464 ("Patient has been decreasing her ziprasidone . . . Patient mentions her

12  mood is still stable."), 468 ("Patient has been in the process of tapering off of her

13  antipsychotics . . . Patient is happy with her mood overall."))

14  The Court finds that the ALJ erroneously attributed the reduction in Plaintiff's

15  dosages to Plaintiff's improvement, but that the error is harmless because the ALJ's overall

16  decision to discredit Plaintiff's symptom testimony remains supported by substantial

17  evidence for the reasons noted throughout this Order. Moreover, the record indicates that

18  Plaintiff's condition did not worsen overall as her medication was reduced.

19  **v.    Daily Activities**

20  Plaintiff maintains that the daily activities relied upon by the ALJ do not contradict

21  her symptom testimony. (Doc. 10 at 18-19.) While the ALJ relied on evidence such as

22  Plaintiff's trips to her husband's work and IKEA, Plaintiff contests that the subsequent

23  worsening of her symptoms after the trips validates her symptom testimony. This is the

24  same argument, though in a different context, that Plaintiff makes regarding her semester

25  of community college and part-time work—that the ALJ should have placed more

26  emphasis on the activity's subsequent impact on Plaintiff's symptoms than on the fact that

27  Plaintiff was able to complete the task. It is unavailing here for the same reasons.

28  Additionally, Plaintiff asserts that the ALJ's characterization of certain allegedly

inconsistent activities is devoid of proper context. (*Id.* at 19-20.) For example, though Plaintiff does pick up groceries, she does not leave her car when she does so. (*Id.* at 19.) While Plaintiff was planning on attending a family vacation in Florida, her husband had significant concerns about her doing so and Plaintiff was prescribed an as-needed anxiety medication. (*Id.*) Though Plaintiff attends weekly family dinners, they often overwhelm her. (*Id.* at 20.) In sum, Plaintiff essentially argues that while she is engaged in the activities the ALJ states, the ALJ should have placed more emphasis on how difficult those activities are for her. (*Id.* at 19-20.) But this argument must fail because the ALJ's interpretation is supported by substantial evidence, and this Court may not substitute a contrary interpretation, even if equally rational. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (noting that a court "may not substitute its judgment for that of the [ALJ]".)

Plaintiff claims that other daily activities do not prove what the ALJ cites them for. (*Id.* at 19-20). The ALJ summarized that Plaintiff "lives with her husband and cares for dogs. She does art projects, coloring, family games, puzzles, goes to her parent's house every Sunday night for dinner and sometimes goes to her parent's cabin (2 ½ hours from her home)." (A.R. at 23.) The ALJ then concluded that the list of activities is "not consistent with [Plaintiff's] testimony where she stated she did not engage in any household chores except some dishes." (*Id.*) Plaintiff alleges that the summarized activities do not at all contradict her testimony that her symptoms prevent her from engaging in household chores. (Doc. 10 at 19-20.) Plaintiff is incorrect. Certainly, caring for dogs can be categorized as a household chore. The remaining listed activities, though not chores themselves, demonstrate that Plaintiff's limitations are not so severe as to preclude her ability to do household chores.

Finally, Plaintiff argues that the allegedly inconsistent activities do not translate to a work setting. (Doc. 10 at 20-21.) Plaintiff notes that the Ninth Circuit has stressed that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than

merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Here, the ALJ noted that Plaintiff engaged in substantial activities that are directly antithetical to her alleged limitations, such as leaving the home, spending extended periods of time at her parents' house, going on a family vacation out of state, caring for pets, playing board games, completing puzzles, and creating art pieces. (A.R. at 23.) Additionally, the Ninth Circuit has previously found that the sort of activities Plaintiff frequently engages in demonstrate skills transferable to a work setting. *Smartt v. Kijakazi*, 53 F.4th 489, 499-500 (9th Cir. 2022) (finding that the plaintiff's regular practices of grocery shopping, caring for her daughter, completing chores, playing board games, and doing crafts demonstrate that she has many of the same capabilities necessary for obtaining and maintaining employment).

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** affirming the October 5, 2021 decision by the Administrative Law Judge and the Commissioner of the Social Security Administration.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment consistent with this Order and close this case.

Dated this 7th day of September, 2023.

Michael T. Liburdi
United States District Judge